**COLONIAL REALTY CORPORATION,**
**Plaintiff,**

v.

**John MacWILLIAMS, Jr., et al.,**
**Defendants.**

**No. 74 Civ. 1818.**

United States District Court,
S. D. New York.

Aug. 21, 1974.

Pomerantz Levy Haudek & Block, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants.

GURFEIN, District Judge:

This is a shareholder's derivative action brought by plaintiff in the name of Colonial Realty Corporation (Colonial) against two officers of Colonial Penn Group, Inc. (CPG). The complaint alleges that defendants MacWilliams (chief executive officer and chairman of

CPG's board of directors) and Brennan (CPG's senior vice president and treasurer) are liable to CPG pursuant to § 16(b) of the Securities Act of 1934, 15 U.S.C. § 78p(b) for profits realized in their short-swing sale and purchase of certain CPG securities. CPG has been joined as party defendant because of its failure to bring this action upon plaintiff's demand.

Defendants MacWilliams and Brennan now move pursuant to Fed.R. Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. The sole issue raised by their motion is whether the transactions complained of occurred within the statutory period of "less than six months." For the reasons stated below I conclude that they did not, and the motion to dismiss will therefore be granted.

The complaint establishes the following facts for purposes of this motion:

"6. Defendant MacWilliams sold 50,000 shares of Penn Group's common stock in the open market at $63.49 per share on December 20, 1972, and purchased 45,000 shares thereof by exercising an option at $6.86 per share on June 19, 1973.

"7. Defendant Brennan sold 4,000 shares of Penn Group's common stock in the open market at $62.13 per share on December 22, 1972, and purchased 5,000 shares thereof by exercising an option at $12.00 per share on June 21, 1973."

The relevant portion of section 16(b) provides:

"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) *within any period of less than six months,* * * * shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. * * *" (Emphasis supplied.)

Plaintiff contends that a purchase of securities on the final day of a six-month period beginning with the date of a previous sale falls within this statutory scheme. This argument admittedly requests the court to overturn a rule established in this circuit some nineteen years ago in Stella v. Graham-Paige Motors Corp., 132 F.Supp. 100 (S.D.N.Y. 1955), remanded on other grounds, 232 F.2d 299 (2d Cir.), cert. denied, 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52 (1956).

In *Stella* the District Court interpreted the phrase "within a period of less than six months" as follows:

". . . Graham-Paige [the defendant] construes the words 'period of less than six months' to mean a period the first and last days of which each include the twenty-four hours from midnight to midnight, and the last day of which is the second day prior to the date corresponding numerically to that of the first day of the period in the sixth succeeding month. For example, the period from and including January 1st to and including June 29th would be a 'period of less than six months' but the period to and including June 30th would be a period of exactly six months. Thus profit realized from a purchase on January 1st and a sale on June 30th would not be recoverable under the statute.

"That construction is correct." 132 F.Supp. at 103–104.

The Court of Appeals approved this formulation in the following language: "We agree with the trial judge that the purchase of the stock occurred on Feb-

ruary 10, 1947, and that therefore sales made *before* August 8, 1947, were within the statutory period." 232 F.2d at 301 (Emphasis supplied).

Clearly, if this formulation is accepted here plaintiff's claim must fail, since the sale/purchase dates of both Mac-Williams' and Brennan's transactions (Dec. 20/June 19 and Dec. 22/June 21, respectively) are patterned exactly after the formulation in *Stella*.

Plaintiff contends, however, that both courts were in error in that formulation because they included the initial purchase or sale date in measurement of the six-month period and because they took literally the statute's "less than" wording without giving adequate attention to the rest of the passage in which that phrase appears.

Although I might have accepted these arguments had I, rather than the Court of Appeals in *Stella*, approached this problem in the first instance, I now feel constrained by the doctrine of *stare decisis* to follow the rule established almost nineteen years ago.

■ While plaintiff is certainly correct in asserting that *stare decisis* is not so rigid as to require perpetuation of error, I cannot agree that this is the kind of situation in which overturning an established principle is appropriate or desirable. Most importantly, the *Stella* formulation is by no means clearly in error.

Nor does the *Stella* rule suffer from any other deficiencies which might persuade me to reexamine it. On a practical basis, it has not proved unworkably difficult to apply. Further, since the six-month requirement it implements is itself an essentially arbitrary legislative guidepost, the *Stella* approach can do no significant violence to the central purpose of the securities laws.

Finally, I am unimpressed by the authorities plaintiff has assembled in support of its position. Plaintiff cites a number of passing judicial references to the § 16(b) six-month requirement which by labored inference might have some relevance, but none of which contains any indication that the courts or counsel in those cases gave direct consideration to this issue. Similarly, the analogies plaintiff attempts to draw to methods of time measurement in unrelated areas of law, in an apparent appeal to the need for uniformity in the system as a whole, are at best of minimal impact.

■ I conclude that the central values underlying the doctrine of *stare decisis*—the interests of the legal system in consistency and uniformity—are fully applicable and dispositive of this issue. The *Stella* rule has been cited by virtually every important research source which might be consulted by a corporate insider in planning dealings in his company's securities under § 16(b), and no contrary authority has been presented.[1] Under such circumstances, absent a showing of significant unworkability or injustice, I must agree with defendants that they and other investors had a right to rely on an established rule of this circuit.

The motion to dismiss is therefore granted and the complaint dismissed. So ordered.

1. See, e. g., 15 U.S.C.A. § 78p(b) n. 56 (1971) ; 2 L. Loss, Securities Regulation 1058 (2d Ed. 1961) and 5 L. Loss, Securities Regulation 3021–22 (1969 Supp.) ; 2 CCH Fed.Sec.L.Rep. ¶¶ 26,101.012, 26,101.60 (1973) ; R. Jennings and H. Marsh, Securities Regulation 1307 (3d Ed. 1972). Nor, incidentally, have I been able to discover any movement by Congress or by the Securities Exchange Commission during the 19 years since *Stella* to change the effect of its rule.

Compare the approach of Judge Bonsal interpreting SEC rule 16b–6 for purposes of *calculating profits* due when improper short-swing transactions have been discovered. Morales v. Walt Disney Productions, 361 F.Supp. 1157 (S.D.N.Y.1973).